# Jefferson County *v.* Abernathy.

*Action against County for Coroner's Fees.*

1. *Coroner of Jefferson county; special act does not repeal general statute in toto.*—The special act of the General Assembly, approved February 10, 1899, "To prescribe the duties and fix the compensation of the coroner of Jefferson county, Alabama, and to provide for the payment of the same," (Acts, 1898-99, p. 815), does not repeal *in toto* the general statute relating to the holding of inquests by coroners and the payment of their fees therefore, (Code, §§ 4572-4573.)

2. *Same; when fees should be allowed.*—The fact that prior to the investigation by a coroner, the death of the person upon whose body the inquest is to be held, was actually known to have been occasioned by a collision between a railroad engine and an electric car, does not prevent the payment of fees to a coroner for holding an inquest, since such actual knowledge does not show that it was publicly known before the jury was summoned who caused the death of the deceased.

APPEAL from the City Court of Birmingham.

Tried before the Hon. CHAS. A. SENN.

This action was brought by the appellee, H. B. Abernathy, against Jefferson county. The complaint contained the common counts and sought to recover for services performed by the plaintiff, an acting justice of the peace in Jefferson county, in holding an inquest in the absence of the regular coroner.

It was averred in the complaint that the plaintiff presented his demand for said services to the board of revenue of Jefferson county, and that the board declined to pay the same. The cause was tried upon the plea of the general issue.

On the trial of the case the plaintiff introduced testimony which tended to show the following facts: On August 1, 1901, the plaintiff presented to the board of revenue of Jefferson county a claim against Jefferson county for services rendered by him as coroner in holding an inquest to investigate the death of one Mattie Osby. This bill, as presented, was itemized and verified, and on August 2, was wholly and entirely disallowed by the board of revenue. The jury empannelled for the inquest returned a verdict that the said Mattie Osby came to her death as the result of a collision between an engine on the Louisville & Nashville Railroad and an electric car, and that John E. Mare and T. A. Coghill were criminally responsible for said collision. The plaintiff was a justice of the peace in Jefferson county at the time of holding said inquest, and the regular coroner was absent and could not be had at that time. Prior to holding said inquest, Abernathy, the plaintiff, made inquiry into the circumstances and death, and was satisfied from said preliminary inquiry that there was reasonable

ground for believing that death had been occasioned by the act of another by unlawful means, and it was after such preliminary investigation or inquiry, that he summoned a jury and inquired into the cause of the death.

The bill of exceptions recites: "The evidence further tended to show that said H. B. Abernathy knew, and it was commonly known prior to his investigation, that the death of said Mattie Osby was occasioned by a collission between an engine on the L. & N. Railroad and an electric car."

The cause was tried by the court without the intervention of a jury; and upon the hearing of all the evidence the court rendered judgment in favor of the plaintiff for the sum of $28.50. To the rendition of this judgment the defendant duly excepted.

The defendant appeals, and assigns as error the rendition of judgment in favor of the plaintiff.

E. J. SMYER, for appellant.

ROBERT N. BELL, contra.

DOWDELL, J.—The only question presented by the record in this case is whether or not the act approved Feb. 10, 1899, (Acts, 1898-99, p. 815), entitled an act "To prescribe the duties and fix the compensation of the coronor of Jefferson county, Alabama, and to provide for the payment of the same," repeals the general statutes. §§ 4572 and 4573 of the Code. In determining this question it should be borne in mind that the well settled rule of construction is, that repeals by implication are not favored by the courts. Where there is no express declaration of repeal of the old contained in the new statute, and no manifestation of an intention by the legislature otherwise clearly shown to repeal the old, unless the provisions of the two are so repugnant and inconsistent as that they may not harmoniously exist together, then both will be permitted to stand. In the present case the repealing clause of the new statute is general. Section 3 provides: "That all laws and parts of laws in conflict

with the provisions of this act be, and the same are hereby repealed." There is no direct and express declaration of repeal of the general statutes above named by mention or specific reference, and if a repeal of these older statutes results, it must be from the rule above laid down,— on account of the repugnancy and inconsistency in the provisions of the two statutes, and only to that extent.

The act of February 10, 1899, contains three sections. Section 1 does no more than to fix the fees of the coroner, and as to certain items, increases the fees over those prescribed under the general statutes, (§ 4572 of Code); and in this respect is inconsistent and in conflict with section 4572, and to that extent by necessary implication operates a repeal of that section as to Jefferson county. Section 2 provides: "That fees for holding inquest shall be itemized and sworn to by the coroner and shall be paid out of the county treasury, and such fees must also be certified by the coroner to the clerk of the criminal court of Jefferson county, and must be taxed as costs against any person on whose body the inquest is held and be collected like other costs in criminal cases, and when collected shall be paid into the county treasury."

Section 4573 of the Code is as follows: "Fees for holding inquest shall be paid out of the county treasury, *when, in the opinion of the court of county commissioners or board of revenue, the inquest should have been held;* and such fees must also be certified by the coroner, to the clerks of the circuit and city courts of the county, and must be taxed as costs against any person who is convicted of murder or manslaughter by killing the person on whose body the inquest was held, and be collected like other costs in criminal cases; and, *when collected in cases in which the county has paid the same, shall be paid to the county treasurer for the use of the county; and in other cases to the coroner.* But no fee shall be paid for an inquest when it is publicly known, before the jury is summoned, who caused the death of the deceased, or when the slayer has been arrested for the homicide, but in such case, if the immediate cause of the death is uncertain, a physician or surgeon may be summoned to make a *post mortem* examination, who shall give his

opinion in writing as to the cause of the death, which must be returned by the coroner as inquests are returned by him, and such coroner, physician or surgeon, shall be entitled to the same fees and mileage, to be paid in the same manner, for attending an inquest; such fees as accrue to coroners for services rendered by him in discharging the duties of sheriff, must be taxed, collected and paid in the same manner that sheriff's fees for like services are taxed, collected and paid." We have set out the section of the Code in full, italicizing certain parts for reasons that will sufficiently appear.

It will be observed that the general statute above set out provides that fees for holding an inquest shall be paid out of the county treasury, *when, in the opinion of the court of county commissioners or board of revenue, the inquest should have been held;* thus placing the payment of inquest fees out of the county treasury, wholly within the discretion of the commissioner's court, or board of revenue of the county.

The local act for Jefferson county copied above, leaves nothing to the discretion of the court of commissioners, or board of revenue of the county, and makes the coroner's fees for holding an inquest payable out of the county treasury in all cases, unless it be for the holding of an inquest where it was publicly known before the jury was summoned, who caused the death of the deceased, or where the slayer had been arrested for the homicide. The general statute further provides after the fees for holding an inquest shall have been certified and taxed as costs, "when collected in cases in which the county has paid the same, shall be paid to the county treasurer for the use of the county; and, in other cases to the coroner." Thus clearly showing, that in cases where the commissioners court, or board of revenue, in the exercise of their discreion under the statute, declined or refused to allow the fees for holding an inquest to be paid out of the county treasury, the coroner was entitled to receive the same, when certified and taxed as costs, and collected pursuant to the statute. Not so under the local act in question, for by its provisions, the fees for

holding an inquest when collected as costs are required in every case to be paid into the county treasury, and in no case could such fees when collected as costs be paid over to the coroner.

So it clearly appears that between these provisions of the general statute and the provisions of the local act, there exists such repugnancy and inconsistency that the two cannot harmoniously stand together, and to that extent the local act repeals the general statutes as to Jefferson county.

The restriction, however, contained in the general law, wherein it is provided that "no fees shall be paid for holding an inquest when it is publicly known before the jury is summoned, who caused the death of the deceased, or when the slayer has been arrested for the homicide," etc., is not inconsistent with any provision of the local act. It does not deal with the mode of payment of inquest fees, as do the other provisions which we have just discussed, but is a positive prohibition against the allowance of fees in the cases mentioned. Under it, and in such cases, no fees payable out of the county treasury, or taxable as costs can be created. It is a wise and wholesome check in the administration of the criminal law against the holding of unnecessary inquests, and is wholly consistent with the provisions of the local act, and, therefore, unaffected by that act.

The evidence in the case was without conflict. The bill of exceptions recites that, "The evidence further tended to show that H. B. Abernathy knew, and it was commonly known prior to his investigation, that the death of said Mattie Osby was occasioned by a collision between an engine on the L. & N. Railroad and an electric car." And from this it is insisted that the judgment appealed from is erroneous, and further, that upon the evidence, judgment should have been rendered in favor of the defendant county. The statute (§ 4573), provides that "no fees shall be paid for an inquest when it is publicly known before the jury is summoned, who caused the death of the deceased," etc. It is not that when the cause of the death, whether by gunshot, knife, poison, or otherwise, is commonly known prior to his, the coroner's

[Penny v. Weems, *et al.*]

investigation, but when it is publicly known before the jury is summoned, *who* caused the death. The evidence did not tend to show that it was publicly known before hand *who* caused the death, but only the way in which it occurred. On the undisputed evidence, the conclusion of the trial court was proper, and its judgment will be affirmed.

Affirmed.